UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Residential Funding Corporation,

       Plaintiff,

v.                                                             Civ. No. 04-4043 (JNE/SRN)
                                                           ORDER

Anvil Funding Corporation,
Jeffery Rippee and Earl Rippee,

       Defendants.

---

Rodney A. Wilson, Esq., Wilson Law Office, appeared for Plaintiff Residential Funding Corporation.

Michael L. Brutlag, Esq., Brutlag, Hartmann & Okoneski, P.A., appeared for Defendants Anvil Funding Corporation, Jeffery Rippee, and Earl Rippee.

---

Residential Funding Corporation (RFC) brought this case against Anvil Funding Corporation (Anvil), Jeffery Rippee (J. Rippee), and Earl Rippee (E. Rippee) (collectively, Defendants) for breach of contract and indemnification after Anvil allegedly refused to repurchase loans from RFC. The case is before the Court on Defendants' motion to dismiss or, in the alternative, to transfer venue. For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

RFC is a Delaware corporation whose principal place of business is in Bloomington, Minnesota. It purchases mortgages from primary lenders on the secondary mortgage market. Anvil is a California corporation whose principal place of business is in Newport Beach, California. Anvil originates, purchases, and sells mortgages. J. Rippee is Anvil's president and resides in California. E. Rippee is Anvil's chairman and also resides in California.

1

On March 19, 2001, RFC and Anvil executed a Client Contract that contemplates RFC's purchase of residential mortgage loans from Anvil. J. Rippee signed it on Anvil's behalf. The Client Contract incorporates a Client Guide. Under the Client Contract and Client Guide, Anvil is in default if false statements were made in connection with an underlying mortgage. In the event of Anvil's default, RFC has the option to require Anvil to repurchase a loan or indemnify RFC for losses sustained. The Client Contract also contains a forum-selection clause:

> The parties submit to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, and the parties irrevocably agree that all claims may be heard or determined in such state or federal court. The parties waive the defense of an inconvenient forum and any other substantive or procedural rights or remedies it may have in any other forum. The parties agree that a final judgment in any action between the parties shall be conclusive and may be enforced in any other jurisdiction than that set forth above. The parties further agree not to institute any legal actions or proceedings against the other party, or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as specified in this paragraph.

On May 1, 2001, J. Rippee and E. Rippee executed personal guarantees that articulated Anvil's desire to sell mortgage loans to RFC, RFC's unwillingness to consider purchasing loans from Anvil without their guarantees, and their anticipation of benefits from Anvil's sale of loans to RFC. Under the guarantees, J. Rippee and E. Rippee "absolutely, irrevocably and unconditionally guarantee[] that [Anvil] will completely and faithfully keep, perform and pay in full when due all of the Guarantied Obligations [Anvil's obligations under the Client Contract and Client Guide]." The guarantees provide that they "shall be construed and enforced in accordance with the internal law, and not the law of conflicts, of the State of Minnesota."

From March 19, 2001, to August 6, 2003, RFC purchased approximately 108 loans from Anvil under the terms of the Client Contract and Client Guide. According to RFC, Anvil submitted mortgage documents to RFC's office in Bloomington, Minnesota, for each loan

purchased. After approving the loans, RFC purchased and funded the loans in Bloomington, Minnesota.

Three of the loans purchased by RFC are the basis of this action. On May 30, 2001, RFC bought a loan from Anvil that had been made to Michael Greenwood. A short time later, Greenwood stopped making payments. RFC's investigation revealed that Greenwood had allegedly misrepresented his income in connection with the loan's origination. Defendants refused RFC's request to repurchase the loan or reimburse RFC for its losses. On December 6, 2001, RFC bought a loan from Anvil that had been made to Eric Mickens. Shortly thereafter, Mickens ceased making payments. According to RFC's investigation, Mickens was a victim of identity theft and the loan was made without his knowledge. RFC asked Defendants to repurchase the Mickens loan or reimburse RFC for its losses. Defendants declined RFC's request. On October 15, 2002, RFC purchased a loan from Anvil that had been made to Massadagh El Krewi. After RFC's purchase, El Krewi stopped making payments. RFC's investigation revealed that El Krewi did not have title to the property when RFC bought the loan from Anvil. RFC asked Defendants to repurchase the loan or reimburse RFC for its losses. Defendants refused to do so.

RFC asserts that Defendants breached the Client Contract, Client Guide, and personal guarantees by allegedly refusing to repurchase the Greenwood, Mickens, and El Krewi loans or reimburse RFC for its losses. Defendants now move to dismiss or, in the alternative, to transfer venue.

## II.     DISCUSSION

Defendants raise two arguments in support of their motion to dismiss. First, J. Rippee and E. Rippee assert that the Court lacks personal jurisdiction over them. Second, Defendants

contend that venue is improper. In the alternative, Defendants move to transfer the action to the United States District Court for the Central District of California.[1]

**A.    Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994). To decide whether the plaintiff has made the requisite showing, a court must view the evidence in the light most favorable to the plaintiff. *Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The court must determine whether the exercise of personal jurisdiction over the defendant complies with the state long-arm statute and, if so, whether it comports with due process. *Stevens*, 146 F.3d at 543; *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1384 (8th Cir. 1996). Minnesota's long-arm statute, Minn. Stat. § 543.19 (2004), extends jurisdiction over defendants to the extent allowed by due process. *Soo Line R.R. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991); *In re Minn. Asbestos Litig.*, 552 N.W.2d 242, 246 (Minn. 1996). The Court therefore need only consider whether the requirements of due process are satisfied to resolve the jurisdictional challenges. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Due process allows a court to exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance

---

[1]    In their motion papers, Defendants referred to the Southern District of California and the Central District of California. At the motion hearing, Defendants clarified that they had moved to transfer the action to the latter.

4

of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant's contacts with the state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Unilateral activity by one who claims a relationship with the defendant does not satisfy the minimum contacts requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Instead, the defendant must act so as to "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*

Five factors determine whether the exercise of personal jurisdiction over a defendant comports with due process. *See Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996); *Soo Line R.R.*, 950 F.2d at 529. The factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. *Burlington Indus.*, 97 F.3d at 1102; *Soo Line R.R.*, 950 F.2d at 529. The last two factors are secondary. *Soo Line R.R.*, 950 F.2d at 529.

The third factor distinguishes general jurisdiction from specific jurisdiction. *Burlington Indus.*, 97 F.3d at 1102. The defendant's maintenance of continuous and systematic contacts with a state may subject it to the state's general jurisdiction, that is, the state may assert personal jurisdiction over the defendant in a suit that neither arises out of nor relates to the defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280-81 (8th Cir. 1991). Specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in a suit that

5

arises out of or relates to the defendant's contacts with the state. *Helicopteros*, 466 U.S. at 414 & n.8; *Morris*, 923 F.2d at 1280. In this case, RFC argues only that J. Rippee and E. Rippee are subject to specific jurisdiction.

### 1. E. Rippee

E. Rippee asserts that the Court lacks personal jurisdiction over him because he has not had any contact with Minnesota. In an affidavit submitted in support of Defendants' motion, he states that he has neither been to nor transacted business in Minnesota. He also states that he is not involved in the day-to-day business of Anvil.

RFC responds that E. Rippee has had sufficient contact with Minnesota to subject him to the Court's personal jurisdiction. Specifically, RFC relies on E. Rippee's alleged contacts with Minnesota during the course of the business relationship between RFC and Anvil and his personal guarantee. As to the former, RFC proffers the affidavit of a Repurchase Account Manager to identify E. Rippee's alleged contacts with Minnesota. The Repurchase Account Manager states that "Anvil and Jeffery Rippee and Earl Rippee would have had dozens of business contacts with [RFC's] employees in Bloomington" during the course of the business relationship between RFC and Anvil. This vague, conclusory assertion is insufficient to satisfy RFC's burden. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (collecting cases), *cert. denied*, 125 S. Ct. 1304 (2005). Moreover, it appears from the affidavit and arguments made in RFC's memorandum of law that RFC seeks to demonstrate that E. Rippee had sufficient contact with Minnesota by virtue of Anvil's activities in Minnesota. A corporate officer's "contacts with a forum state are not to be judged according to the corporation's activities there; rather, each defendant's contacts with the forum state must be assessed individually." *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122

6

(D. Minn. 1996), *aff'd*, 130 F.3d 1305 (8th Cir. 1997). Thus, resolution of E. Rippee's jurisdictional challenge turns on whether the guarantee he executed is sufficient to subject him to the Court's personal jurisdiction.

Mindful that each case must be judged on its own facts, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985), the Court observes that the United States Court of Appeals for the Eighth Circuit has on at least one prior occasion held that nonresident guarantors of contractual obligations had insufficient contact with the forum state to subject them to personal jurisdiction there. In *Arkansas Rice Growers Cooperative Ass'n v. Alchemy Industries, Inc.*, 797 F.2d 565 (8th Cir. 1986), the court held that the "mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation does not subject the guarantors to jurisdiction in Arkansas" and that the guarantors' status as shareholders in the debtor corporation did not establish sufficient contacts to satisfy due process. *Id*. at 573. The Eighth Circuit distinguished cases from other jurisdictions where courts had held that the assertion of personal jurisdiction over nonresident guarantors who stood to benefit from the performance of the underlying contract comported with due process. *Id.* In those cases, there was "substantive identity of the guarantors and the corporation whose obligation they guarantee, evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals," or a choice-of-law provision in the guarantee contract or the underlying contract that selected the law of the forum state. *Id.* at 573-74 (citations omitted).

Most, if not all, of the pertinent distinctions highlighted in *Arkansas Rice Growers* are present in this case. E. Rippee's personal guarantee identifies him as Anvil's chairman, recognizes his expectation of benefits from the performance of the Client Contract, states that RFC "will not consider purchasing . . . mortgage loans from [Anvil]" without his guarantee, and

contains a Minnesota choice-of-law provision. RFC bought the three loans that are the basis of this action after E. Rippee executed the personal guarantee. Moreover, the underlying contract that E. Rippee personally guaranteed, the Client Contract, contains a Minnesota forum-selection clause. Under these circumstances, the Court concludes that the nature and quality of E. Rippee's contacts with Minnesota support the Court's exercise of personal jurisdiction over him.

As to the second factor, a single contact with a forum may be sufficient to confer personal jurisdiction over a nonresident defendant if the cause of action arose out of that contact. *Marquette Nat'l Bank of Minneapolis v. Norris*, 270 N.W.2d 290, 295 (Minn. 1978) (citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)); *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 674 (Minn. Ct. App. 2000). In this case, E. Rippee's contact with Minnesota consists of his personal guarantee of the Client Contract. Given the nature, quality, and, as discussed below, the connection of this contact to the cause of action, the Court concludes that E. Rippee's contact with Minnesota supports the exercise of personal jurisdiction over him.

Turning to the connection between the cause of action and E. Rippee's contact with Minnesota, RFC asserts that it purchased the three loans that form the basis of this action under the terms of the Client Contract and Client Guide. E. Rippee allegedly breached his personal guarantee when Defendants refused to repurchase the loans or indemnify RFC for its losses. RFC's claims therefore directly relate to E. Rippee's contact with Minnesota.

The fourth factor also supports the exercise of personal jurisdiction over E. Rippee. Minnesota has an interest in providing a forum to one of its residents, RFC, to litigate claims against nonresidents. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995).

Finally, the fifth factor does not strongly favor E. Rippee or RFC. E. Rippee is a California resident. In his affidavit, he asserts that he has health problems that prevent him from engaging in "any type of travel," that he is not capable of traveling to Minnesota to participate in the defense of this action, and that he "might" be able to participate in the defense if the action proceeds in California.[2] The Court acknowledges that E. Rippee is experiencing serious health problems. Nevertheless, the record reveals that litigation will be inconvenient for him without regard to where it takes place. Turning to RFC, although it maintains an office in California, the decision to purchase and fund the loans from Anvil took place in its office in Bloomington, Minnesota. Under these circumstances, some level of inconvenience is inevitable. Nevertheless, a plaintiff is normally entitled to select the litigation's forum. *Id.*

Having considered whether E. Rippee had contact with Minnesota and whether the exercise of jurisdiction over him based on his contact comports with due process, the Court concludes that E. Rippee subjected himself to the Court's specific jurisdiction. Accordingly, the Court denies Defendants' motion insofar as E. Rippee asserts that the Court lacks personal jurisdiction over him.

2. *J. Rippee*

The arguments raised in connection with J. Rippee's jurisdictional challenge are similar to those raised by E. Rippee. The parties first dispute whether J. Rippee had any contact with Minnesota. In his affidavit, J. Rippee acknowledges that he had some contact via telephone with RFC personnel in Minnesota. He also executed the Client Contract on Anvil's behalf with RFC, a Minnesota resident. Moreover, he personally guaranteed the contract between Anvil and RFC.

---

[2] The Court notes that E. Rippee submitted an affidavit in support of Defendants' motion to dismiss or, in the alternative, to transfer venue.

9

Viewed in the light most favorable to RFC, the record reveals that J. Rippee had contact with Minnesota.

J. Rippee argues that the Court should not consider the contacts he had in his corporate capacity in determining whether to exercise personal jurisdiction over him. He cites no authority to support this argument. It appears that he seeks application of the "fiduciary shield" doctrine. The doctrine provides that "corporate officers and directors are not subject to personal jurisdiction merely by virtue of actions they took *on behalf of* the corporation." *Oakridge Holdings, Inc. v. Brukman*, 528 N.W.2d 274, 278 (Minn. 1995). Neither the Supreme Court nor Minnesota has adopted the doctrine. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[W]e today reject the suggestions that employees who act in their official capacity are somehow shielded from suit in their official capacity."); *Brukman*, 528 N.W.2d at 278; *see also M.G. Incentives, Inc. v. Marchand*, No. C6-00-962, 2001 WL 96223, at *5 (Minn. Ct. App. Feb. 6, 2001) (noting that the "Minnesota Supreme Court has given no indication" that it is inclined to adopt the doctrine). Accordingly, the Court rejects this argument and turns to the factors that determine whether exercise of personal jurisdiction over him comports with due process.

As to the nature and quality of the contacts, J. Rippee executed the Client Contract on Anvil's behalf, personally guaranteed that contract, and had contact via telephone with RFC's personnel in Minnesota regarding RFC's potential purchase of loans from Anvil. His personal guarantee identifies him as Anvil's president, recognizes his expectation of benefits from the performance of the Client Contract, states that RFC "will not consider purchasing . . . mortgage loans from [Anvil]" without his guarantee, and contains a Minnesota choice-of-law provision. RFC bought the three loans that are the basis of this action after J. Rippee executed the personal guarantee. Moreover, the Client Contract contains a Minnesota forum-selection clause. Under

10

these circumstances, the Court concludes that the nature and quality of J. Rippee's contacts with Minnesota support the Court's exercise of personal jurisdiction over him.

Turning to the second factor, J. Rippee executed the Client Contract, a personal guarantee, and had some contact via telephone with RFC personnel in Minnesota. J. Rippee's contacts with Minnesota are more extensive than those of his father, E. Rippee. Accordingly, the Court concludes that the quantity of J. Rippee's contacts with Minnesota support the exercise of personal jurisdiction over him.

The same conclusion is warranted with respect to the third factor. RFC allegedly purchased the three loans that form the basis of this action under the terms of the Client Contract and Client Guide. J. Rippee allegedly breached his personal guarantee when Defendants refused to repurchase the loans or indemnify RFC for its losses. RFC's claims therefore directly relate to J. Rippee's contacts with Minnesota.

As discussed above, the fourth factor supports the exercise of personal jurisdiction over J. Rippee. Minnesota has an interest in providing a forum to one of its residents, RFC, to litigate claims against nonresidents. *See Northrup King*, 51 F.3d at 1389.

Finally, the fifth factor does not strongly favor J. Rippee or RFC. Litigation in Minnesota will inconvenience J. Rippee because he resides in California. Turning to RFC, although it maintains an office in California, the decision to purchase and fund the loans from Anvil took place in its office in Bloomington, Minnesota. Under these circumstances, some level of inconvenience is inevitable. Nevertheless, a plaintiff is normally entitled to select the litigation's forum. *Id.*

Having considered whether J. Rippee had contact with Minnesota and whether the exercise of jurisdiction over him based on his contacts comports with due process, the Court

concludes that J. Rippee subjected himself to the Court's specific jurisdiction. Accordingly, the Court denies Defendants' motion insofar as J. Rippee asserts that the Court lacks personal jurisdiction over him.

**B.      Improper Venue**

An action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2000). To determine whether venue is proper, a court does not ask which district among potential forums is the best venue. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003); *Setco Enters., Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). Instead, a court asks whether the district selected by the plaintiff had a substantial connection to the claim, without regard to whether other forums had greater contacts. *Pecoraro*, 340 F.3d at 562; *Setco Enters.*, 19 F.3d at 1281. Viewed in the light most favorable to RFC, the record reveals that Anvil submitted documents to RFC's Bloomington, Minnesota, office in an effort to sell the three loans to RFC. RFC decided to purchase the loans and funded the purchases in Bloomington, Minnesota. The borrowers allegedly made misrepresentations in connection with the loans' originations. The Client Contract, Client Guide, and personal guarantees allegedly require Defendants to repurchase the loans from RFC or indemnify RFC for its losses. Under these circumstances, Minnesota has a substantial connection to the claims asserted by RFC such that venue is proper here. Accordingly, the Court denies Defendants' motion to dismiss insofar as Defendants assert that venue is improper.

**C.      Transfer Venue**

Defendants move in the alternative to transfer the action to the Central District of California. "For the convenience of the parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000). The party seeking a transfer ordinarily bears the burden of establishing that a transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). A motion to transfer an action to another district should be denied unless the balance of factors strongly favors the moving party. *Graff v. Qwest Communications Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). In this case, the parties do not dispute that the action "might have been brought" in the Central District of California, but they disagree as to whether a transfer is warranted.

As noted above, some level of inconvenience to the parties is inevitable in this case. E. Rippee and J. Rippee are California residents. E. Rippee has health problems that prevent him from engaging in any travel. Anvil is a California corporation and has its principal—and only—place of business in Newport Beach, California. RFC is a Delaware corporation and his its principal place of business in Minnesota. Although RFC maintains an office in California, the decision to purchase and fund the loans from Anvil took place in RFC's Minnesota office. Under these circumstances, a transfer of this case to California would merely shift the inconvenience from Defendants to RFC. The Court therefore concludes that this factor does not weigh in favor of transfer. *See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000); *Norval Indus., Inc. v. Superior Cos.*, 515 F. Supp. 895, 899 (D. Minn. 1981).

As to the convenience of the witnesses, it is an important factor in the transfer analysis. *Graff*, 33 F. Supp. 2d at 1121; *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991). Considerations relevant to this factor include the number of essential nonparty witnesses, their location, and the preference for live testimony. *Graff*, 33 F. Supp. 2d at 1121; *Nelson*, 759

13

F. Supp. at 1402. This factor is not a contest between the parties as to which one presents a longer list of witnesses located in the potential districts. *Graff*, 33 F. Supp. 2d at 1121-22; *Nelson*, 759 F. Supp. at 1402. The party seeking the transfer must identify the essential witnesses to be called and make a general statement of what their testimony will cover. *Graff*, 33 F. Supp. 2d at 1121-22; *Nelson*, 759 F. Supp. at 1402. The court must examine the materiality and importance of the anticipated witnesses' testimony and determine whether the forum is convenient for them. *Graff*, 33 F. Supp. 2d at 1122.

In this case, the parties provide very little information about witnesses. According to J. Rippee, Defendants expect "several current or former [e]mployees of Anvil with specific knowledge of the relationship and course of dealing with RFC and the transactions that are the subject of this action" to testify. He states they are California residents. In addition, he states that "it may be necessary for various third parties associated with the loans in question to testify." He asserts that the "various third parties" are or were California residents. In its memorandum of law, RFC asserts that it will call its employees to testify. RFC does not identify the subject of their testimony. RFC contends that the "great bulk of its proof will focus on the documents" submitted by Defendants to RFC.

On this record, the Court concludes that the convenience of the witnesses weighs neither in favor of nor against transfer. The Court does not know who the "various third parties" are, the subject of their testimony, or their location. The description of the anticipated testimony of Anvil's current or former employees does not provide sufficient information to allow the Court to weigh its materiality and importance. RFC does not describe the anticipated testimony of its employees. In short, the record is insufficient for the Court to determine whether this factor weighs in favor of or against transfer.

Among the factors a court may consider in determining whether the interest of justice favors transfer are a plaintiff's choice of forum, the relative ability of the parties to bear the expense of litigating in a distant forum, the obstacles to a fair trial, and the advantages of having a local court determine issues of local law. *Terra Int'l*, 119 F.3d at 696; *Graff*, 33 F. Supp. 2d at 1122. In this case, RFC commenced this action in Minnesota. Without evidentiary support, the Court is unable to assess Defendants' assertion that RFC is "clearly more financially suited to prosecute the case in California than the Defendants are to defend the case in Minnesota." In any case, Defendants do not assert that they are unable to bear the financial burden of litigating in Minnesota. As to E. Rippee's health issues, the Court is not persuaded that transfer of this action to the state of his residence will serve the interest of justice given his inability to engage in any type of travel. The personal guarantees contain Minnesota choice-of-law clauses. Finally, the Client Contract contains a Minnesota forum-selection clause. Under these circumstances, the Court concludes that the interest of justice does not favor transfer.

In short, Defendants have not met their burden of establishing that the balance of factors strongly favors a transfer of this action to the Central District of California. Accordingly, the Court denies their motion to transfer.

### III.   ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion to dismiss or, in the alternative, to transfer venue [Docket No. 4] is DENIED.

Dated: June 3, 2005

s/ Joan N. Ericksen_____<br>
JOAN N. ERICKSEN<br>
United States District Judge